790 A.2d 699

Lewis STOKES

v.

AMERICAN AIRLINES, INC., et al.

No. 2616, Sept, Term, 2000.

Court of Special Appeals of Maryland.

Feb. 1, 2002.

---

442

Thomas Teodori (Benjamin T. Boscolo and Chasen & Boscolo, Chartered on the brief), Greenbelt, for appellant.

Janis R. Harvey (Anthony J. Zaccagnini and Semmes, Bowen & Semmes on the brief), Baltimore, for appellees.

Argued before SALMON, SONNER and CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

SONNER, Judge.

Lewis Stokes and his employer, American Airlines, Inc., return to this Court on a seven-year-old workers' compensation claim. Stokes originally lost his claim before the Workers' Compensation Commission, but won an award from a jury in the Circuit Court for Anne Arundel County. We then published an opinion in February 1998, remanding the case to the Commission for reconsideration. *American Airlines Corp. v. Stokes*, 120 Md.App. 350, 707 A.2d 412 (1998) ("*Stokes I*"). Thereafter, the Commission granted Stokes a compensation award, but, on petition for judicial review,[1] the circuit

---

1. Judge Wilner, in *Colao v. County Council*, 346 Md. 342, 359–61, 697 A.2d 96 (1997), pointed out that since July 1993, what used to be called appeals from administrative agency decisions are now "petitions for judicial review."

court ruled, as a matter of law, that he was not entitled to any award. That judgment violated the mandate of *Stokes I.* Accordingly, we reverse it and remand for further proceedings in the circuit court.

### *Stokes I*

On August 5, 1994, Lewis Stokes injured his back while unloading baggage from an American Eagle plane. About five months later, he filed a claim for workers' compensation against American. Stokes testified at the Commission hearing, along with three of American's supervisors and one of its employees. The testimony focused on Stokes's conduct before and after the alleged injury; no medical experts testified. Stokes did submit, as exhibits, the progress reports of the physician, radiologist, and chiropractor who treated him between August 1994 and January 1995. These reports indicated that Stokes suffered a "lumbar radiculopathy," but did not examine the cause of the problem. The Commission denied Stokes's claim, finding that he did not sustain an accidental injury in the course of his employment and that the alleged injury did not cause his subsequent back pain.

Stokes petitioned the circuit court for review and requested a jury trial. The jury exercised de novo review, although it was instructed to treat the Commission's decision as presumptively correct. *See* Md.Code (1991, 1999 Repl.Vol.), Lab. & Empl. § 9–745(b)(1). Again, Stokes testified and offered his physician's reports, but did not present any expert medical testimony. American responded with the videotaped deposition of a physician, who denied any causation between Stokes's injury and subsequent disability. Apparently persuaded by Stokes's evidence, however, the jury reversed the Commission's order and awarded him compensation from August 5, 1994 through March 20, 1996. American then moved for judgment notwithstanding the verdict, arguing that Stokes failed to present sufficient evidence of an accidental injury and any causation between the injury and later disability. That motion was denied.

American appealed the denial of its motion to this Court. We upheld the jury's determination that Stokes suffered an

accidental injury, but reversed its nineteen-month award of compensation. In our view, whether Stokes's injury caused a compensable disability was a complicated medical question, which could result in an affirmative answer only if an expert guided the jury to that end. We specifically noted three factors that negated Stokes's claim: (1) procedurally, the jury was required to treat the Commission's decision as presumptively correct; (2) the evidence documented his long history of chronic back deterioration; and (3) the lone medical expert that testified for the defense discounted the alleged link between the injury and the disability. Against the weight of those factors, Stokes's evidence was, in our opinion, too light to justify a verdict in his favor.

Having upheld the jury's finding of an injury, but not its calculation of disability, we could have reversed the circuit court's judgment outright. Maryland Rule 8–604(d), however, also allowed us to remand the matter if the "substantial merits" of the case called for something other than affirmance, reversal, or modification. We chose to remand the case because, while Stokes failed to link his injury to the nineteen-month period of disability, we thought he might be able to link the injury to a shorter span of time, which might entitle him to a lesser amount of compensation. Specifically, we stated:

> Although, as we have held, there was no legally sufficient case to connect the accident of August 5 to the subsequent back condition that was the basis of the appellee's claim for temporary total disability benefits from August 5, 1994 through March 20, 1996, there was arguably nonetheless a sustainable claim for some more minimal award for the injury of August 5 itself and for the more immediate sequelae associated with it. We will, therefore, remand the case to the Workers' Compensation Commission for that more limited reconsideration.

*Stokes,* 120 Md.App. at 369, 707 A.2d 412.

### *Stokes II*

The Commission presided over a second hearing in September 1999. As far as we can tell from the record, Stokes did

not present any new evidence regarding his injury and disability, other than to submit updated reports from his treating physician.[2] With our decision in hand, however, the Commission reversed its earlier determination and found that Stokes suffered an accidental injury on August 5, 1994, which caused a temporary total disability from that date until April 11, 1995. Essentially, the Commission reduced the jury's award from nineteen months to eight months.[3]

American petitioned the circuit court for review and moved for summary judgment. *Stokes I*, it argued, confirmed that there was an accidental injury, but no causal link between the injury and the disability, and without that link, there could be no compensation award. American read the mandate in *Stokes I* as a call for a formal order by the Commission asserting an injury, but denying an award. Stokes responded with what we have indicated was the correct reading of our earlier decision:

> The only thing the Court of [Special] Appeals struck down was that period of disability. They did not say that there was no injury from this accident. They said the period of disability was not supported by the evidence and sent it back to the Commission.

The circuit court granted American's motion for summary judgment, reasoning that "you can't have a more minimal award if you don't have it for the larger period of time." [4]

---

**2.** From these updated reports, we discern that Stokes allegedly suffered a second work-related injury on September 28, 1996. According to his treating physician, this injury caused "acute cervical strain, acute lumbosacral strain, and a lumbar radiculopathy." The doctor did not provide such a direct statement of causation for the relationship between the August 5, 1994 injury and subsequent disability.

**3.** It is not clear to us how the Commission arrived at this eight-month period of compensation.

**4.** The court also expressed concern that American had already compensated Stokes for the period of disability from August 5, 1994 through April 11, 1995, and American could not recapture those payments. *See St. Paul Fire and Marine Ins. Co. v. Treadwell*, 263 Md. 430, 283 A.2d 601 (1971). That left the court wondering, "what are we all fighting

Thus, it rejected our remand for a "more limited consideration," and ruled, as a matter of law, that Stokes was not entitled to compensation for the August 5th injury.

### *The Law of the Case Doctrine*

 The present appeal intimates that our decision in *Stokes I* confused the parties. At the time we issued the opinion, however, neither litigant moved for reconsideration or petitioned the Court of Appeals for review. Thus, our decision became the law of the case, to be respected as the "controlling legal rule of decision." *Kline v. Kline,* 93 Md.App. 696, 700, 614 A.2d 984 (1992). The law of the case doctrine, specifically a subset of the doctrine known as "the mandate rule," prevents trial courts from dismissing appellate judgment and relitigating matters already resolved by the appellate court. *Tu v. State,* 336 Md. 406, 416, 648 A.2d 993 (1994); *Kline,* 93 Md.App. at 702, 614 A.2d 984. Once an appellate court has answered a question of law in a given case, the issue is settled for all future proceedings. *See Turner v. Housing Auth.,* 364 Md. 24, 31–33, 770 A.2d 671 (2001); *Hagez v. State,* 131 Md.App. 402, 418–19, 749 A.2d 206 (2000).

 The law of the case doctrine also applies when, as here, we revisit a prior decision of this Court that involved the same parties and the same claim. *Hawes v. Liberty Homes, Inc.,* 100 Md.App. 222, 230–31, 640 A.2d 743 (1994). We normally are bound by our earlier decision and will not contradict it. *Id.* at 230, 640 A.2d 743. The doctrine, however, is a judicial creation borne of procedure and convenience, rather than an inflexible rule of law. *Id.; Houghton v. County Comm'rs,* 305 Md. 407, 415, 504 A.2d 1145 (1986) (McAuliffe, J., dissenting). It "lies somewhere beyond *stare decisis* and short of *res judicata.*" *Tu,* 336 Md. at 416, 648 A.2d 993. Accordingly, we will depart from a prior decision if:

---

about?" Stokes admitted the dispute was a "tempest in a teapot." He explained further, however, that American wanted a ruling that the August 5th activity did not cause any kind of compensable injury because Stokes had lodged another workers' compensation claim, still pending, which related to the August 5th injury.

"the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision on the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Turner,* 364 Md. at 34, 770 A.2d 671 (citations omitted); *see also Hawes,* 100 Md.App. at 231, 640 A.2d 743. To our knowledge, there is only one reported opinion, *Hawes,* in which a panel of judges from this Court rejected the holding of an earlier panel in the same matter and declined to follow it as the law of the case. The two appeals in *Hawes* presented a quagmire of procedure and contract law. Suffice it to say, on the first review, this Court erroneously allowed the trial court to depart from the jury's finding of a breach of contract. Having reconsidered the relevant law and the implications of the first decision, Chief Judge Wilner, writing for this Court, was compelled to admit the mistake and correct it for purposes of the second review. *Hawes,* 100 Md.App. at 232, 640 A.2d 743.

This case is not analogous to *Hawes* because we discern no reason to depart from the holding and mandate of *Stokes I.* Our conclusion that the causation issue was a complicated question, necessitating expert testimony, was well grounded in precedent, while our remand for reconsideration of the period of disability was prudent and equitable. The Commission then followed *Stokes I* by finding an accidental injury and reconsidering the period of disability. The circuit court, on the other hand, summarily ruled that no grounds for a compensation award existed, even though we remanded the case for just such a result. The court may have disagreed with our holding in *Stokes I,* but it could not contradict it. Thus, we remand the case for the circuit court's reconsideration of the merits of the second disability award.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**